IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| In re: | PROMESA |
| | Title III |
| THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, | |
| | No. 17 BK 3283-LTS |
| as representative of | (Jointly Administered) |
| THE COMMONWEALTH OF PUERTO RICO, *et al.,* | |
| Debtors.[1] | |
| ASOCIACIÓN PUERTORRIQUEÑA DE PROFESORES UNIVERSITARIOS, ÁNGEL RODRÍGUEZ RIVERA, JAVIER CÓRDOVA ITURREGUI, HERIBERTO MARÍN CENTENO, YOHANA DE JESÚS BERRÍOS, ANNABELL C. SEGARRA, NYDIA E. CHÉVEREZ RODRÍGUEZ, FRANCES BOTHWELL DEL TORO, LIDA ORTA ANÉS, AND IVETTE BONET RIVERA, | Adv.Proc. No. 19-034-LTS |
| Plaintiffs, | |
| vs. | |
| UNIVERSITY OF PUERTO RICO, GOVERNING BOARD OF THE UNIVERSITY OF PUERTO RICO, WALTER ALOMAR JIMÉNEZ, ZORAIDA BUXÓ SANTIAGO, ERIC PÉREZ TORRES, ALEJANDRO CAMPORREALE MUNDO, ANTONIO MONROIG | |

---

[1] The Debtors in these Title III Cases, along with each Debtor's respective Title III case number and the last four (4) digits of each Debtor's federal tax identification number, as applicable, are the (i) Commonwealth of Puerto Rico (Bankruptcy Case No. 17 BK 3283-LTS) (Last Four Digits of Federal Tax ID: 3481); (ii) Puerto Rico Sales Tax Financing Corporation ("COFINA") (Bankruptcy Case No. 17 BK 3284-LTS) (Last Four Digits of Federal Tax ID: 8474); (iii) Puerto Rico Highways and Transportation Authority ("HTA") (Bankruptcy Case No. 17 BK 3567-LTS) (Last Four Digits of Federal Tax ID: 3808); (iv) Employees Retirement System of the Government of the Commonwealth of Puerto Rico ("ERS") (Bankruptcy Case No. 17 BK 3566-LTS) (Last Four Digits of Federal Tax ID: 9686); and (v) Puerto Rico Electric Power Authority ("PREPA") (Bankruptcy Case No. 17 BK 4780-LTS) (Last Four Digits of Federal Tax ID: 3747); and (vi) Puerto Rico Public Buildings Authority ("PBA") (Bankruptcy Case No. 19-BK-5523-LTS) (Last Four Digits of Federal Tax ID: 3801) (Title III case numbers are listed as Bankruptcy Case numbers due to software limitations).

MALATRASSI, NEFTALÍ, SOTO SANTIAGO, EMILIO
COLÓN BELTRÁN, JORGE HADDOCK ACEVEDO,
AND FINANCIAL OVERSIGHT AND MANAGEMENT
BOARD FOR PUERTO RICO,

              Defendants.

MAYRA OLAVARRIA CRUZ, ALAN RODRIGUEZ PEREZ,
JORGE RIVERA VELAZQUEZ, NAOMY RIVERA, AND
UNIVERISTY OF PUERTO RICO RETIRMENT SYSTEM,

              Nominal Defendants.

## REPORT AND RECOMMENDATION ON DEFENDANTS' MOTIONS TO DISMISS
## AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

June 10, 2020

DEIN, U.S.M.J.

### I. INTRODUCTION

The plaintiffs are Asociacion Puertorriquena de Profesores Universitarios, Inc. ("APPU"),

an association of active or retired university professors from the University of Puerto Rico

("UPR") and nine of its members, all of whom have made contributions to the University of

Puerto Rico Retirement System (collectively the "Plaintiffs").  They have brought suit against

UPR, the Governing Board of UPR and its members (collectively the "Governing Board"), the

Financial Oversight and Management Board for Puerto Rico ("FOMB" or "Oversight Board")

and, as a "nominal defendant," the University of Puerto Rico Retirement System ("Retirement

System").  In their Amended Complaint ("AC" Docket No. 13)[2] the Plaintiffs contend that the

Fiscal Plan for UPR that the Oversight Board certified makes "reforms to the UPR Retirement

---

[2] Unless otherwise indicated, Docket references are to entries in Adversary Proceeding No. 19-034-LTS (the "Adversary Proceeding").

System in detriment of the vested rights of the retirees, participants and beneficiaries[,]" and

that the Oversight Board is precluded from doing so because it has no authority over the

Retirement System, which is an independent trust.  See AC ¶¶ 3.11, 4.5-4.38.  See also Docket

No. 22, Pl. FOMB Opp., at 2 ('the thrust of Plaintiffs' claim against the Oversight Board . . . [is]

that it has not and cannot exercise any authority over the Retirement System.").  The Plaintiffs

further contend that the Governing Board "has neglected its fiduciary obligations" by failing to

procure payments due to the Retirement System from UPR, and by "allowing the Oversight

Board to dictate the fate of the Retirement System without legal faculty to do so."  AC ¶ 3.12.

The Oversight Board has moved to dismiss the Amended Complaint pursuant to Fed. R.

Civ. P. 12(b)(1) and 12(b)(6).  Docket No. 17.  While the FOMB disputes the proposition that it

has no authority over the Retirement System, it contends that the issue does not need to be

resolved because, among other reasons, the Plaintiffs lack standing to assert the claims in their

Amended Complaint.  Consequently, the Oversight Board does not address the merits of the

Plaintiffs' claim that the FOMB lacks authority over the Retirement System and reserves the

right to do so at a later date.  See Docket No. 25 at 2, n.3.  UPR, along with the Governing Board

and its members (collectively the "UPR Defendants") also have moved to dismiss the Amended

Complaint, reinforcing the FOMB's standing arguments and arguing, in addition, that there is no

basis for this Court to assert supplemental jurisdiction over the UPR Defendants in this Title III

proceeding.  Docket No. 18.  These motions to dismiss have been referred to this Magistrate

Judge for a Report and Recommendation pursuant to 28 U.S.C. § 636 and Fed. R. Civ. P. 72(b).

After careful consideration of all the pleadings,[3] this Court recommends that the FOMB's Motion to Dismiss (Docket No. 17) be ALLOWED pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction.  This Court further recommends that the Court decline to exercise supplemental jurisdiction over the claims against the UPR Defendants, and that the UPR Defendants' Motion to Dismiss (Docket No. 18) be ALLOWED on that basis.

## II. STATEMENT OF FACTS

Whether proceeding under Fed. R. Civ. P. 12(b)(1) or 12(b)(6), in ruling on a motion to dismiss, the court construes "the well-pleaded facts of the complaint in the light most favorable to the plaintiff[]."  Ocasio-Hernandez v. Fortuño-Burset, 640 F.3d 1, 7 (1st Cir. 2011).  See Lyman v. Baker, 954 F.3d 351, 359-60 (1st Cir. 2020) (same basic principles apply to review of motions to dismiss for lack of standing under Rule 12(b)(1) and for failure to state a claim under Rule 12(b)(6)).  In addition, the court may consider documents attached to or incorporated into the complaint, and relevant public records.  Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 68 (1st Cir. 2014).  See also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (court ruling on a 12(b)(6) motion can consider "documents the authenticity of which are not disputed by the parties; . . . official public records; . . . documents central to plaintiffs' claim; or . . . documents sufficiently

---

[3] The following pleadings have been filed in connection with this matter: "The Financial Oversight and Management Board for Puerto Rico's Memorandum in Support of Motion to Dismiss Plaintiffs' Amended Adversary Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(B)(6)" ("FOMB Mem." Docket No. 17), the UPR Defendants' "Joint Motion for Dismissal" ("UPR Mem." Docket No. 18), Plaintiffs' "Opposition to the Financial Oversight and Management Board for Puerto Rico's Memorandum in Support of Motion to Dismiss Plaintiffs' Amended Adversary Complaint Pursuant to Fed. R. Civ. P. 12(B)(1) and 12(B)(6)" ("Pl. FOMB Opp." Docket No. 22), Plaintiffs' "Opposition to the UPR Defendants' Motion to Dismiss" ("Pl. UPR Opp." Docket No. 23), the UPR Defendants' "Joint Reply to Opposition to the UPR Defendants' Motion for Dismissal" ("UPR Reply" Docket No. 24) and the FOMB's "Reply in Support of Oversight Board Motion to Dismiss Plaintiffs' Amended Complaint Pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6)" ("FOMB Reply" Docket No. 25).

referred to in the complaint."). Applying these principles here, the facts are derived from the Amended Complaint and the September 20, 2019 letter from the FOMB to the Governor of Puerto Rico attached to Pl. FOMB Opp. as Ex. 1 ("FOMB Letter").

## Background

APPU is a not for profit corporation whose members are active or retired UPR professors. AC ¶ 2.1. Its main purpose is "to protect the rights and promote the professional interests of all its members" and one of its specific objectives is "to procure the improvement of the working and retirement conditions of its members." Id. (quotation omitted). The nine individual plaintiffs are members of APPU who have made contributions to the Retirement System. Id. ¶¶ 2.2 – 2.11. These include mandatory as well as supplemental voluntary contributions. Id. ¶¶ 5.1, 5.5.[4] It is the contention of the Plaintiffs that the Fiscal Plan that the Oversight Board certified for UPR on June 5, 2019 was detrimental to them because it "called for a freeze of the Defined Benefits model, move[d] to a Defined Contribution plan and progressively reduce[d] accrued benefits of participants, beneficiaries and retirees, including Plaintiffs'." Id. ¶ 3.10 (internal punctuation and quotations omitted). It is further the Plaintiffs' contention that the Oversight Board had no authority to include any reforms to the UPR System that were detrimental to the vested rights of the retirees, participants and beneficiaries in the certified Fiscal Plan. Id. ¶ 3.11. Since, as noted above, the Oversight Board has not moved to dismiss based on the merits of the issue of whether it has authority over the Retirement

---

[4] The Plaintiffs allege that "[m]ost of the Plaintiffs to this action, relying on the assurances made by the Retirement System, purchased additional and/or supplementary benefits as allowed by the Retirement System and have made the significant additional contributions that they have been required [to make] in order to obtain the guaranteed higher benefits." AC ¶ 5.9.

System, the Plaintiffs' analysis will be discussed only briefly.

It is the Plaintiffs' contention that under Puerto Rico law, the Retirement System is "a trust, which constitutes an independent legal entity with legal personality and legal capacity." Id. ¶ 3.2, citing Law 219-2012 Section 2, as amended by Law 9-2017.  Pursuant to a Deed of Trust, UPR is the settlor of the Retirement System, and the Governing Board is the Original Trustee of the Retirement System.  Id. ¶¶ 3.3-3.4.  Given its status as a Trust, the Plaintiffs contend that "the estate of the Retirement System is not property of the University of Puerto Rico." Id. ¶ 3.7.  "Consequently, even though the Oversight Board exercises its oversight power over the University of Puerto Rico, the Retirement System lies outside the scope of its authority." Id. ¶ 3.8.  Rather, the Plaintiffs explain, "[a]s a necessary consequence of being an independent trust, the Retirement System is a creditor of the UPR, like any other, with a contractual and legal right to collect the monies that the UPR owes.  The Oversight Board cannot unilaterally decide that the UPR need not comply with its contractual and legal obligations towards the Retirement System.  That is illegal." Pl. FOMB Opp. at 3.

**The Certified UPR Fiscal Plan**

On June 5, 2019,[5] the Oversight Board certified a Fiscal Plan for the University of Puerto Rico.  See AC ¶ 4.13.  Therein, the Oversight Board indicated that based on an actuarial study,[6]

---

[5] The Oversight Board had certified an earlier plan on October 23, 2018, which allegedly "included 'a freeze the pension, and continuation of a Defined Contribution similar to those of other Commonwealth plans . . . (and) a reduction in accrued benefits, using the same mechanism as for other (Commonwealth) plans, but with recognition of the partially funded status of the UPR retirement system.'"  AC ¶ 3.9.  The Amended Complaint focuses on the 2019 Plan.

[6] PROMESA allows the FOMB to undertake an analysis of the pension systems in the territorial government to determine whether they are underfunded, and to evaluate the fiscal and economic impact of the pension cash flows.  48 U.S.C. § 2151(a).

it was "apparent that the magnitude of the challenges facing the UPR Retirement System is

greater than previously understood" and that "if UPR continues its current funding policy its

pension plan will be insolvent by 2031." Id. ¶¶ 4.16-4.17.  The Certified Plan contained three

options that the Oversight Board believed UPR could take to adequately fund the UPR

Retirement Plan ("UPRRP").  FOMB Letter at 2.[7]  These alternatives are described in relevant

part as follows:

> Option 1 – Baseline benefits scenario: Under this option, UPR makes no changes to the
> current defined benefit plan.  Therefore, UPR must make a contribution of roughly $161
> million per year. . . .  Relative to what the Certified Fiscal Plan projects, this option
> requires UPR to save an additional $60 million per year within its budget in order to
> afford the $161 million contribution to UPRRP (in addition to an extra $80 million in
> FY2020 to make up for the deficient contribution UPR has already announced).

> Option 2 – Freeze defined benefit plan in 2020 and move to a defined contribution plan:
> Under this option, UPR freezes the pension plan in FY2020 and establishes a new
> defined contribution plan.  Because freezing the defined benefit plan reduces the cost of
> the UPRRP benefits, UPR can make lower contributions to the UPRRP.  Our recent
> actuarial analysis indicates the actuarially required amount is $161 million in FY2020,
> followed by approximately $140 million per year afterwards.  Relative to what the
> Certified Fiscal Plan projects, this option requires UPR to save an additional $40 million
> per year within its budget in order to afford the $140 million contribution to UPRRP (in
> addition to an extra $80 million in FY2020 to make up for the deficient contribution UPR
> has already announced).

> Option 3 – Reduce accrued benefits, freeze defined benefit plan in 2020 and move to a
> defined contribution plan:  Under this option, UPR freezes the pension plan in FY2020,
> reduces accrued benefits and eliminates bonuses in a manner similar to ERS and TRS,
> and establishes a new defined contribution plan.  Our recent actuarial analysis indicates
> the actuarially required amount is $161 million in FY2020, followed by approximately
> $100 million per year afterwards.  Relative to what the Certified Fiscal Plan projects, this
> option does not require UPR to save any additional amount in order to afford the $100
> million contribution to UPRRP (except for an extra $80 million in FY2020 to make up for
> the deficient contribution UPR has already announced).

---

[7] Since the parties agree that the FOMB Letter accurately details the relevant elements of the
Certified UPR Fiscal Plan, citations will be to the FOMB Letter.

Id.

In its September 20, 2019 Letter to the Governor, the Oversight Board stressed that "the

pensions of Puerto Rico's public workers should be, must be a priority for the Government."  Id.

at 1.  The letter was written because "UPR recently announced that it is contributing less than

half the actuarially required pension contributions to the University of Puerto Rico Retirement

Plan ('UPRRP') for FY 2020" and that in the Oversight Board's view, "[t]his conscious decision by

UPR to undermine its pension obligations and to put the pensions of its faculty and staff at risk

is grossly irresponsible, contrary to the Government's public policy of prioritizing pensions, and

violative of PROMESA."  Id.  Thus, instead of the $161 million contribution to UPRRP in FY2020

called for under any of the options, UPR was only intending to contribute $80 million in FY2020.

Id.  The letter concluded:

> UPR is knowingly defunding the UPRRP, putting the pensions of its faculty and staff at
> risk rather than heeding the advice of its actuaries, the Certified Fiscal Plan for PR, or the
> learned experience from the Commonwealth.  We write now to ask for your
> commitment and support to stave off a looming pension crisis at UPR.  The first step is
> getting UPR to make the full $161 million contribution to the UPRRP this year.  Once
> that happens, UPR may choose the pension benefit and funding approach that it
> believes best services its interests.  But whatever UPR chooses, it must not put the
> UPRRP or pension of faculty and staff at risk.

Id. at 3.  The Plaintiffs cite to this Letter as evidence that the Oversight Board is "exercising

oversight authority over the Retirement System when it has no legal power to do so."  Pl. FOMB

Opp. at 9.

It is undisputed that while "the New UPR Fiscal Plan does state the Oversight Board's

view that Option 3 is the most fiscally prudent of the three options[,]" UPR has not selected any

option.  FOMB Reply at 3-4; FOMB Letter at 3.  The Plaintiffs assume, however, that the third

Option will be adopted.  See AC ¶ 3.10.  It is the Plaintiffs' position that "the Oversight Board

[8]

has no legal power to recommend changes or modifications to the Retirement System, in detriment of the benefits of the participants and in violation of their constitutional rights." Id. ¶ 4.36.  The Plaintiffs are seeking a declaratory judgment "decreeing null and void any involvement of the Oversight Board with the operation and benefits of the Retirement System" and injunctive relief "staying further involvement of the Oversight Board with the operation and benefits of the Retirement System." Id. ¶¶ 4.37-4.38.  In short, the Plaintiffs contend that the purpose of their lawsuit is to prohibit the Oversight Board from including any reference to the Retirement System in the Fiscal Plan for UPR.

The Plaintiffs take exception to the FOMB's assessment of the need to reform the UPR Retirement System.  See id. ¶¶ 6.26-6.29.  Rather, it is the Plaintiffs' contention that "[t]he only real problem of the Retirement System's financial stability is the non-compliance of the UPR with the corresponding payments to the system and the failure of the Governing Board and the UPR President to comply with their obligations to secure the funds to which the UPR is entitled pursuant to the laws of the Commonwealth of Puerto Rico." Id. ¶ 6.30.  See also id. ¶¶ 6.33-6.34.  Thus, the Plaintiffs allege that UPR's Governing Board and President have breached their fiduciary duties under the Deed of Trust and Law 219-2012 by, among other things, failing to insure that funds were paid into the Retirement System, and allowing the Oversight Board to illegally intrude into the affairs of the Retirement System.  Id. ¶¶ 7.1-7.15.  In addition, the Plaintiffs allege that the Oversight Board is liable for tortious interference with the Governing Board's fiduciary obligations because "the Oversight Board has imposed its will over the Governing Board of the University of Puerto Rico and demanded for them to take action in detriment of the Retirement System and its participants in breach of its fiduciary duties." Id. ¶

[9]

8.10.  While not mentioned in the Amended Complaint, it is undisputed that the Plaintiffs have brought a state court action against the UPR Defendants arguing that they have acted negligently in administering and managing the Retirement System.  See Junta de Retiro et al. v. UPR et al., Civil No. KLAN201900304; UPR Opp. at 13.  That matter is still pending before the Puerto Rico Court of Appeals.

## Relief Sought

The Plaintiffs are seeking the following relief:

1. "a Declaratory Judgment decreeing that any oversight act by the Oversight Board in relation to the University of Puerto Rico retirement System is null and void;"

2. "injunctive relief staying any involvement of the Oversight Board with the operation and benefits of the Retirement System;"

3. "a Declaratory Judgment decreeing that the Governing Board cannot obey the instructions of the Oversight Board regarding the Retirement System;"

4. "[injunctive] relief staying further compliance of the Governing Board with the instructions of the Oversight Board regarding the Retirement System;"

5. "order the Governing Board to Comply with Certification 146 (2014-2015);"[8]

6. "order the University of Puerto Rico to repay any loss or depreciation of trust property and any profit made by trustee resulting from the breach of fiduciary duties of the Governing Board, and any profit that would have accrued to the trust property if there had been no breach of trust, and return with interest the amounts transferred to it in breach of trust by the Governing Board;"

7. "remove the Governing Board as trustee of the Retirement System;"

8. "appoint the Retirement System Board as successor trustee of the Retirement System;"

9. "order the Governing Board and the UPR President to secure compliance with Law 2-

---

[8] Certification 146 (2014-2015), adopted by the Governing Board, required funding of the Retirement System by using "a closed amortization of forty (40) years[.]"  AC ¶ 6.9.

1966;"[9] and

10. "order the compensation of damages suffered by Plaintiffs."

AC ¶¶ 10.1-10.10.  The defendants argue, *inter alia*, that the Plaintiffs lack standing to seek

this relief, and contend that the Amended Complaint should be dismissed on this and various

other grounds.

Additional facts will be provided below where appropriate.

### III.  ANALYSIS – FOMB'S MOTION TO DISMISS

#### A.  Standard of Review: Motion to Dismiss

In ruling on a motion to dismiss under either Rule 12(b)(1) or 12(b)(6), the court must

"isolate and ignore statements in the complaint that simply offer legal labels and conclusions

or merely rehash cause-of-action elements."  Lyman, 954 F.3d at 360 (quoting Schatz v.

Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012)).  In addition, the court

must "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true,

drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a

claim for relief."  Id. (quoting Schatz, 669 F.3d at 55).  "Plausible, of course, means something

more than merely possible, and gauging a pleaded situation's plausibility is a 'context-specific'

job that compels us 'to draw on' our 'judicial experience and common sense.'"  Id. (quoting

Schatz, 669 F.3d at 55 (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173

L. Ed. 2d 868 (2009))).  In addition, the court "can consider (a) 'implications from documents'

attached to or fairly 'incorporated into the complaint,' (b) 'facts' susceptible to 'judicial notice,'

---

[9] Law 2-1966, 28 U.S.C. § 2202 sets forth a formula for funding.  AC ¶¶ 6.34, 9.9.

[11]

and (c) 'concessions' in (the) plaintiff's 'response to the motion to dismiss.'" <u>Id.</u> (quoting

<u>Schatz</u>, 669 F.3d at 55-56 (footnote omitted)).

**B. <u>Standard of Review: Standing</u>**

"A court presented with motions to dismiss under both Rules 12(b)(1) and 12(b)(6)

should ordinarily decide jurisdictional questions before addressing the merits." <u>Ambac</u>

<u>Assurance Corp. v. Commonwealth of Puerto Rico</u> (<u>In re Fin. Oversight & Mgmt. Bd. for P.R.</u>),

297 F. Supp. 3d 269, 278 (D.P.R. 2018), <u>aff'd</u>, 927 F.3d 597 (1st Cir. 2019). "The party invoking

the jurisdiction of a federal court carries the burden of proving its existence." <u>Id.</u> "The Court

also has an independent duty to assess whether it has subject matter jurisdiction of an action."

<u>Id.</u> In the instant case, the FOMB, joined by the UPR Defendants, contends that the Plaintiffs

lack both constitutional standing and prudential standing to assert their claims against the

Oversight Board.

The court's jurisdiction is limited by the U.S. Constitution to adjudicating "Cases" and

"Controversies." <u>See</u> <u>Lyman</u>, 954 F.3d at 360 (citing <u>Hochendoner v. Genzyme Corp.</u>, 823 F.3d

724, 731 (1st Cir. 2016) (quoting U.S. Const. art. III, § 2, cl. 1)). "The heartland of constitutional

standing is composed of the familiar amalgam of injury in fact, causation, and redressability."

<u>Id.</u> (quoting <u>Hochendoner</u>, 823 F.3d at 731 ). As the First Circuit recently explained further:

> An injury-in-fact is the invasion of a legally protected interest that is both "concrete and
> particularized" and "actual or imminent," as opposed to "conjectural or hypothetical."
> <u>Lujan</u> [v. Defenders of Wildlife, 504 U.S. 555, 560, 112 S. Ct. 2130, 2136, 119 L. Ed. 2d
> 351 (1992)] (internal quotation marks omitted). Concreteness and particularity are two
> separate requirements. <u>See</u> <u>Spokeo, Inc. v. Robins</u>, —— U.S. ——, 136 S. Ct. 1540, 1545,
> 194 L. Ed. 2d 635 (2016). To be concrete, an injury must "actually exist"; it cannot be
> "abstract." <u>Id.</u> at 1548. For an injury to be "particularized," it must go beyond a
> "generalized grievance[ ]," <u>DaimlerChrysler Corp. v. Cuno</u>, 547 U.S. 332, 344, 348, 126 S.
> Ct. 1854, 164 L. Ed. 2d 589 (2006) (citation omitted), to manifestly "affect the plaintiff in
> a personal and individual way," <u>Lujan</u>, 504 U.S. at 560 n.1, 112 S. Ct. 2130. Injuries that

are too "widely shared" or are "comparable to the common concern for obedience to law" may fall into the category of generalized grievances about the conduct of government. Becker v. FElection C, 230 F.3d 381, 390 (1st Cir. 2000); see Lance v. Coffman, 549 U.S. 437, 442, 127 S. Ct. 1194, 167 L. Ed. 2d 29 (2007).

Causation is established by demonstrating a causal connection "between the injury and the conduct complained of," where the injury is "fairly . . . trace[able] to the challenged action of the defendant and not . . . th[e] result [of] the independent action of some third party not before the court." Lujan, 504 U.S. at 560-61, 112 S. Ct. 2130 (alterations in original) (quoting Simon v. E. Ky. Welfare Rights Org., 426 U.S. 26, 41-42, 96 S. Ct. 1917, 48 L. Ed. 2d 450 (1976)). Finally, "it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' " Id. at 561, 112 S. Ct. 2130 (quoting Simon, 426 U.S. at 38, 43, 96 S. Ct. 1917).

Lyman, 954 F.3d at 360-61.

The FOMB contends that the Plaintiffs have failed to identify any injury in fact that has resulted from the Oversight Board's actions, and, therefore, fail to put forth a case or controversy that is ripe for judicial determination. Consequently, the FOMB argues, the Plaintiffs lack constitutional standing to maintain this action. As detailed below, this Court agrees. Moreover, since the absence of a case or controversy requires the dismissal of the entire Amended Complaint, this Court will address the other grounds for relief proffered by the Oversight Board only briefly.

The Oversight Board further alleges that all but the seventh and eighth claims for relief should be dismissed because the Plaintiffs lack prudential standing. As the Supreme Court has explained:

Beyond the constitutional requirements, the federal judiciary has also adhered to a set of prudential principles that bear on the question of standing. Thus, this Court has held that "the plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S., at 499, 95 S. Ct., at 2205. In addition, even when the plaintiff has alleged redressable injury sufficient to meet the requirements of Art. III, the Court has refrained from adjudicating "abstract questions of wide public significance" which amount to "generalized grievances," pervasively shared and most appropriately addressed in the

[13]

representative branches. *Id.*, at 499–500, 95 S. Ct., at 2205–2206. Finally, the Court has required that the plaintiff's complaint fall within "the zone of interests to be protected or regulated by the statute or constitutional guarantee in question." *Association of Data Processing Service Orgs. v. Camp*, 397 U.S. 150, 153, 90 S. Ct. 827, 830, 25 L.Ed.2d 184 (1970).

Valley Forge Christian Coll. v. Ams. United for Separation of Church & State, Inc., 454 U.S. 464, 474–75, 102 S. Ct. 752, 760, 70 L. Ed. 2d 700 (1982) (footnotes omitted).  Plaintiffs purport to

bring their claims against the Oversight Board pursuant to PROMESA.  See, e.g., AC ¶ 1.2.  The

issue to be decided under the rubric of "prudential standing" is "whether the statute grants the

plaintiff the cause of action that he asserts."  Bank of Am. Corp. v. City of Miami, Fla., 137 S. Ct.

1296, 1302, 197 L. Ed. 2d 678 (2017).  The court presumes "that a statute ordinarily provides a

cause of action 'only to plaintiffs whose interests fall within the zone of interests protected by

the law invoked.'"  Id. (quoting Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S. Ct.

1377, 1388, 188 L. Ed. 2d 392 (2014) (internal quotation marks omitted)).  Moreover,

"[w]hether a plaintiff comes within 'the zone of interests' is an issue that requires [the court] to

determine, using traditional tools of statutory interpretation, whether a legislatively conferred

cause of action encompasses a particular plaintiff's claim."  Id. at 1302-03 (quoting Lexmark,

134 S. Ct. at 1387 (some internal quotation marks omitted)).

The precise parameters of the Oversight Board's argument that the Plaintiffs lack

prudential standing are not clear.  As an initial matter, the FOMB argues that the Plaintiffs lack

prudential standing because PROMESA § 106 bars challenges to its certification of the UPR and

Commonwealth Fiscal Plans and budgets, and PROMESA §§ 201 and 202 do not provide a

private cause of action to challenge these certifications.  As a result, the FOMB argues, the

Plaintiffs are not statutorily authorized to, and may not maintain this action.  See FOMB Mem.

[14]

at 19; FOMB Reply at 5.  The FOMB raises substantially the same arguments in support of its

contention that this Court lacks subject matter jurisdiction over these claims for relief due to

PROMESA § 106(e).  See FOMB Mem. at 22-24.  While this Court agrees that PROMESA § 106(e)

is relevant and controlling in this case, it will be discussed herein in connection with whether §

106(e) applies to deprive this Court of subject matter jurisdiction over the claims raised in the

Amended Complaint, and not as an issue of prudential standing.

    The Oversight Board further argues that the Plaintiffs lack prudential standing to seek

the relief sought in the 6th request, which asks for an order requiring UPR to pay damages to

the Retirement System, because that claim belongs to the Retirement System.  See FOMB

Mem. at 20.  It argues further, on the basis of statutory law, and not prudential standing, that

the Plaintiffs cannot seek any of the relief in requests 1-5 and 9-10 because those claims belong

to the Retirement System or the UPR Governing Board, and must be asserted by the Trustee.

See id. at 20-22.  In the alternative, according to the Oversight Board, the Plaintiffs are limited

to bringing any claims against the Trustee.  See FOMB Reply at 6-7.  The Plaintiffs dispute the

FOMB's statutory interpretation and its assessment of the Plaintiffs' rights and obligations

under the controlling laws and Deed of Trust.  See Pl. FOMB Opp.  at 12-14.  For the reasons

detailed herein, this Court does not need to reach the issue whether these claims must be

asserted by (or against) the Trustee as a matter of either prudential standing or statutory

construction.  Since the Plaintiffs lack constitutional standing due to the absence of any actual

case or controversy, the Motion to Dismiss should be allowed on that basis.

C.  **The Plaintiffs Lack Constitutional Standing to Assert Their Claims**

**There Is No Actual Case or Controversy**

This Court recommends that the Motion to Dismiss be allowed because the Plaintiffs have failed to allege the existence of an actual case or controversy.  The Plaintiffs have not asserted an "actual or imminent" injury, as opposed to "conjectural or hypothetical" harm, and thus have failed to plead facts sufficient to demonstrate that they have constitutional standing to pursue this litigation.

As an initial matter, the UPR Fiscal Plan is not a plan of adjustment, and it does not purport to discharge or otherwise eliminate any debt that may be owed to the Plaintiffs.  Moreover, it is undisputed that there has been no reduction in pension benefits, and UPR has not selected, much less implemented, any modifications to the Retirement System that reduce the benefits to which the Plaintiffs claim to be entitled.  While the Plaintiffs argue that the Oversight Board has "presented Option 3 as the only option" and that the remaining options "are mere explanations of unwanted courses of action[,]" this argument is belied by the FOMB Letter on which Plaintiffs rely.  See Pl. FOMB Opp. at 7.  As detailed therein, the Oversight Board expressly stated that the decision of how to fund the Retirement System was up to UPR.  See FOMB Letter at 3 (once UPR makes its full contribution this year "UPR may choose the pension benefit and fund approach that it believes best services its interests.").  A "threatened injury must be *certainly impending* to constitute injury in fact," and "[a]llegations of *possible* future injury" are not sufficient to establish an actual case or controversy.  Clapper v. Amnesty Int'l USA, 568 U.S. 398, 409, 133 S. Ct. 1138, 1147, 185 L. Ed. 2d 264 (2013) (quoting Whitmore v. Arkansas, 495 U.S. 149, 158, 110 S. Ct. 1717, 1724-25, 109 L. Ed. 2d 135 (1990) (punctuation

[16]

omitted and emphasis added)); accord Reddy v. Foster, 845 F.3d 493, 500-01 (1st Cir. 2017) and

cases cited.  To put the point another way, the instant controversy is not ripe for judicial

intervention.  Reddy, 845 F.3d at 500 ("Much as standing doctrine seeks to keep federal courts

out of disputes involving conjectural or hypothetical injuries, the Supreme Court has reinforced

that [the] ripeness doctrine[,]" which is "another aspect of justiciability," "seeks to prevent the

adjudication of claims relating to contingent future events that may not occur as anticipated, or

indeed may not occur at all.") (internal quotation marks omitted).  The basic rationale of the

ripeness doctrine is to "prevent the courts, through avoidance of premature adjudication, from

entangling themselves in abstract disagreements." Ernst & Young v. Depositors Eco. Prot.

Corp., 45 F.3d 530, 535 (1st Cir. 1995) (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.

Ct. 1507, 1515, 18 L. Ed. 2d 681 (1967)).  "[A] court has no alternative but to dismiss an unripe

action." Id.

        While acknowledging that they have not suffered any reductions in benefits, the

Plaintiffs urge this Court to find that they have constitutional standing because they have

allegedly suffered other types of harm.  These arguments are not persuasive.

        Specifically, the Plaintiffs argue that the mere inclusion of anything about the

Retirement System in the UPR Fiscal Plan causes them harm and, therefore, grants them

standing.  See Pl. FOMB Opp. at 9 ("the UPR's fiscal plan cannot include instructions,

recommendations and, much less, orders on how to manage the Retirement System, regardless

of the nature of them.  Just as the fiscal plan cannot recommend how to manage the internal

affairs of a UPR bondholder or creditor.").  This argument, however, fails to establish a concrete

injury.  The Plaintiffs fail to identify any specific harm arising from the mere mention of the

[17]

Retirement System in UPR's Fiscal Plan.  Absent a concrete injury, the Plaintiffs lack standing.

See Lugo v. Gov't of the United States (In re Fin. Oversight & Mgmt. Bd. for P.R.), 404 F. Supp.

3d 536, 546-47 (D.P.R. 2019) (challenging the FOMB's authority without any objection to the

"specific manner in which the application of those powers has resulted in pecuniary losses or

other injuries to [plaintiff] personally" fails to state actual case or controversy) (citing Rivera-

Shatz v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 327 F.

Supp. 3d 364, 370-71 (D.P.R. 2018) (holding that President of the Senate's and Speaker of the

House's challenge to application of a provision of PROMESA in the abstract "fails to frame a

case or controversy of the requisite degree of immediacy and reality" and therefore seeks "no

more than a general advisory opinion regarding the meaning and effect of a section of the

statute"), aff'd, 916 F.3d 98 (1st Cir. 2019)).

    The Plaintiffs argue further that "[t]he fact that the Oversight Board is usurping the

administrative powers of the trustee of the Retirement System, is an actual and current injury."

Pl. FOMB Opp. at 8.  Despite this conclusory argument, however, there are no allegations in the

Amended Complaint which would support the conclusion that the Oversight Board has taken

over the internal affairs of the Retirement System.  Conclusory allegations are insufficient to

establish an actual harm.  See Lyman 954 F.3d at 360.  There are no facts alleged from which a

factfinder could infer that the Oversight Board has stepped into the shoes of the Governing

Board or otherwise prevented the Governing Board from exercising its own lawful authority.[10]

---

[10] The Oversight Board also claims that if there was damage caused by its "usurpation" of
authority, "the injured party would be the Governing Board, not Plaintiffs."  FOMB Reply at 5.  Thus, any
such claim must be brought by the Trustee, and cannot be maintained by the Plaintiffs against the
Oversight Board.  The Plaintiffs contend under Puerto Rico Law 219-2012, a "trustee may initiate actions
against third parties on his own motion if the trustee holds the trust property.  However, if the trustee

[18]

There is nothing in the Amended Complaint to indicate that the FOMB has assumed "the administrative powers" of UPR or the Retirement System.

In sum, the Plaintiffs have failed to put forth sufficient facts to establish the existence of an actual case or controversy.  As a result, they lack constitutional standing to maintain this action in its entirety.  Therefore, this Court recommends that the Motion to Dismiss the Complaint as to the FOMB be allowed.

**D.  This Court Lacks Jurisdiction Over Challenges to the Certification of Fiscal Plans**

The Oversight Board also argues that the Amended Complaint, in actuality, constitutes a challenge to UPR's Fiscal Plan.  As the First Circuit has recently affirmed, Section 106 of PROMESA "grants the [Oversight] Board exclusive authority to certify Fiscal Plans and Territory Budgets for Puerto Rico.  It then insulates those certification decisions from judicial review. . . ." Ambac Assurance Corp., 927 F.3d at 602  (quoting Méndez-Núñez v. Fin. Oversight & Mgmt. Bd. for P.R., (In re Fin. Oversight & Mgmt. Bd. for P.R.), 916 F.3d 98, 112 (1st Cir. 2019)).[11]  While the Plaintiffs admit that this Court lacks jurisdiction to entertain challenges to the content of a certified fiscal plan, they assert that this principle does not apply to their Amended Complaint as they are not seeking to challenge UPR's Certified Fiscal Plan.  See Pl. FOMB Opp. at 10-11.

---

fails to initiate an action, the beneficiary may do so joining the trustee as a co-defendant."  Pl. FOMB Opp. at 9, citing P.R. Law 219-2012 § 53 (attached to Pl. FOMB Opp. as Ex. 2) (emphasis omitted). Whether these principles are applicable to the present situation does not need to be resolved at this time, since there are no allegations which establish that the Oversight Board has usurped the authority of the Governing Board.

[11] PROMESA section 106(e) provides that "[t]here shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under this chapter."  48 U.S.C. sec. 2126(e).

This Court disagrees.

The Plaintiffs admit that under PROMESA § 201, the Oversight Board may certify fiscal plans "with respect to the territorial government or covered territorial instrumentality" in order to "provide a method to achieve fiscal responsibility and access to the capital markets[.]"  Pl. FOMB Opp. at 11, citing PROMESA § 201(b)(1).  However, they argue, the Oversight Board's actions constitute a fiscal plan for the Retirement System, which is "an independent trust that is not a territorial instrumentality."  Pl. FOMB Opp. at 11.  As they argue, "PROMESA does not allow the Oversight Board to make fiscal plans for independent trusts that are creditors."  Id. This proposed reading misrepresents the essence of the Amended Complaint.

The conduct of which the Plaintiffs complain is the Oversight Board's certification of the Fiscal Plan for UPR.  See AC ¶ 3.9.  As detailed above, it is the Plaintiffs' contention that the Oversight Board exceeded its authority in connection with UPR's Fiscal Plan by including references to the Retirement System.  See AC ¶ 3.11 ("the Oversight Board is precluded from including in the certified New Fiscal Plan for University of Puerto Rico of June 5, 2019 reforms to the UPR Retirement System in detriment of the vested rights of the retirees, participants and beneficiaries.").  The only conduct of the Oversight Board about which the Plaintiffs complain is its actions in connection with its certification of the Fiscal Plan for UPR.  There is no judicial review of those actions.

The fact that the Plaintiffs are challenging UPR's Fiscal Plan is further evidenced by the relief being sought.  For example, but without limitation, the Plaintiffs are seeking a declaratory judgment that "the Governing Board cannot obey the instructions of the Oversight Board regarding the Retirement System," AC ¶ 10.3, and an injunction "staying further compliance of

[20]

the Governing Board with the instructions of the Oversight Board regarding the Retirement

System." Id. ¶ 10.4.  The "instructions" to which the Plaintiffs are referring are contained in the

Certified Fiscal Plan for UPR.  In sum, the crux of the Amended Complaint is a challenge to

references to the Retirement System in the Fiscal Plan.  PROMESA § 106(e) precludes this Court

from hearing such a challenge.[12]

### E. Other Challenges to Specific Claims for Relief

The Oversight Board raises a number of other grounds for dismissal of the specific

requests for relief contained in the Amended Complaint.  Basically, in these arguments the

Oversight Board contends that if the Plaintiffs have standing, which the Oversight Board denies,

the Amended Complaint should fail on the merits.  In particular, the FOMB argues that

Requests 5, 9 and 10 are preempted by and conflict with PROMESA §§ 105, 201, 202 & 207 (see

FOMB Reply at 8-10); and that Requests 1-4 seek either impermissible advisory opinions or "are

so vague and broad they can have no consequence without future litigation and would

impermissibly impinge on the Oversight Board's undisputed lawful authority over UPR's fiscal

plans and budgets."  (FOMB Reply at 10-11).  The FOMB argues further that PROMESA § 305

bars the 9th Request for Relief (FOMB Reply at 12-13) and that the 10th Request is barred by

---

[12] The FOMB contends that PROMESA § 106(e) applies to preclude all claims for relief except for the 6th, 7th and 8th seeking, respectively, an order requiring UPR to pay damages to compensate the Retirement System for losses caused by the Governing Board's breach of fiduciary duty, an order removing the Governing Board as trustee of the Retirement System and an order appointing the Retirement System Board as successor trustee of the Retirement System.  In this Court's view, to the extent that these claims for relief apply to the FOMB, they also flow from and are dependent on the Plaintiffs' objections to the actions taken by the FOMB in connection with its certification of UPR's and the Commonwealth's Fiscal Plans and Budgets.  Therefore, given the context in which these claims have been raised, this Court lacks subject matter jurisdiction over these requests for relief to the extent that they relate to the FOMB pursuant to PROMESA § 106(e) as well.

PROMESA § 105 and "fails to adequately allege tortious interference by the Oversight Board or a violation of the Contract Clause." (FOMB Reply at 13). The Plaintiffs challenge all of these arguments.

As detailed above, it is appropriate to address jurisdictional issues before addressing the merits of a motion to dismiss. Ambac Assurance Corp., 297 F. Supp. 3d at 278. In light of this Court's conclusion that the Plaintiffs have failed to allege an actual case or controversy, and lack constitutional standing to maintain this action, it is not necessary to reach the merits of these claims. Moreover, since addressing the merits would, in the current posture of the case, result in the issuance of an advisory opinion, this Court respectfully declines to make a merits recommendation at this time.[13]

## IV. ANALYSIS – UPR DEFENDANTS' MOTION TO DISMISS

In the Amended Complaint, the Plaintiffs allege that "[t]he Governing Board and the UPR President have not complied with their fiduciary duties" by failing to properly administer the Retirement System under the Deed of Trust and Law 219-2012, failing to collect monies due to the Retirement System and by allowing the Oversight Board "to dictate the fate of the retirement System without legal faculty to do so," among other things. AC ¶¶ 6-6.7. They allege further that "[t]he actions and omissions of the Governing Board are a breach of fiduciary duty and a violation of the Contracts Clause." Id. ¶ 7. The UPR Defendants also have moved to dismiss the Amended Complaint. They join in the FOMB's arguments that the Plaintiffs do not

---

[13] Of course, if the District Judge does not adopt the recommendation that the Motion to Dismiss be Allowed for lack of standing, this Court would address the merits of the remaining grounds for dismissal.

have standing because they have not suffered any actual harm, and that there is no case or

controversy that is ripe for adjudication.  They further argue that the UPR Defendants are not

subject to Title III proceedings, and that it is not appropriate for the Court to exercise

supplemental jurisdiction over the claims against them.   For the reasons detailed herein, this

Court recommends that the Court decline to exercise supplemental jurisdiction over the claims

against the UPR Defendants, and that the UPR Defendants' Motion to Dismiss be allowed

accordingly.

**A.  There Is No Basis for this Court to Exercise Supplement Jurisdiction**

For the reasons detailed above, the Plaintiffs have failed to establish that they have

suffered an actual injury in that there have been no reductions in their retirement benefits.

Therefore, the Plaintiffs lack constitutional standing to maintain their claims against the

Oversight Board and the Commonwealth of Puerto Rico.  The Plaintiffs have alleged that the

UPR Defendants have breached their fiduciary duties under the Deed of Trust and related laws

governing the Retirement System, and have impaired and interfered with the Retirement

Systems' obligations to the beneficiaries of the System.  The Plaintiffs do not contend that they

have raised any claims against the non-debtor UPR Defendants over which this Title III Court

has original jurisdiction.  See Pl. UPR Opp.  Rather, the Plaintiffs argue that this Court should

exercise supplemental jurisdiction over the claims against the UPR Defendants.  See id. ¶ 3.2;

UPR Mem. ¶ 25.  For the reasons detailed herein, this Court recommends that the Court decline

to exercise supplemental jurisdiction and that the claims against the UPR Defendants be

dismissed accordingly.

Pursuant to 28 U.S.C. § 1367(a), "in any civil action of which the district courts have

original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." A district court may decline to exercise such supplemental jurisdiction if "(1) the claim raises a novel or complex issue of State law, (2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction, (3) the district court has dismissed all claims over which it has original jurisdiction, or (4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). Several of these factors warrant the decision not to exercise supplemental jurisdiction in the instant case.

As an initial matter, supplemental jurisdiction may only be exercised if the claims "form part of the same case or controversy" as those claims over which the district court has original jurisdiction. 28 U.S.C. § 1367(a). Thus, "[t]he state and federal claims must derive from a common nucleus of operative fact" and the claims must be such that the plaintiff "would ordinarily be expected to try them all in one judicial proceeding[.]" United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966). Here the claims against the UPR Defendants relate to their rights and obligations under the Deed of Trust and related laws. In contrast, the claims against the FOMB relate to that entity's rights and obligations under PROMESA and related bankruptcy laws. On their face, the claims are not so interrelated as to support the exercise of supplemental jurisdiction. Moreover, it does not appear that these are claims that would ordinarily be expected to be tried in a single proceeding since the Plaintiffs seem to have brought substantially similar claims against the UPR Defendants alone in state court.

[24]

Even if the Court could exercise supplemental jurisdiction, this Court recommends that it decline to do so.  As the Plaintiffs concede, "generally, federal courts do not exercise supplemental jurisdiction over state law claims whenever the federal claims are dismissed at an early stage of the litigation."  Pl. UPR Opp. at ¶ 3.1 (citing Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1177 (1st Cir. 1995)).  Since the claims over which this Court has original jurisdiction are being dismissed at the motion to dismiss stage, there is no reason to exercise jurisdiction over claims which are appropriately decided in state court.

Moreover, in deciding whether to exercise supplemental jurisdiction, courts must consider "the interests of fairness, judicial economy, convenience, and comity."  Camelio v. Am. Fed'n, 137 F.3d 666, 672 (1st Cir. 1998).  Dismissal is especially appropriate where the state-law claims raise "sensitive and undeveloped questions of state law."  Sexual Minorities Uganda v. Lively, 899 F.3d 24, 35 (1st Cir. 2018).  Here, the Plaintiffs' allegations raise novel issues relating to the establishment and operation of the Retirement System pursuant to the laws of the Commonwealth of Puerto Rico, and raise issues that are hotly contested.  Finally, the Plaintiffs themselves do not argue that the Court should exercise supplemental jurisdiction over their claims against the UPR Defendants if the federal claims are dismissed.  See Pl. UPR Opp. ¶ 3.2 ("supplemental jurisdiction over the UPR Defendants is more than warranted" for the sole reason that "there are ample bases that grant federal jurisdiction over the actions of the Oversight Board.").  Therefore, given this Court's recommendation that all the claims over which the Court has original jurisdiction should be dismissed, the early stage of this litigation, and the complex issues of state law presented, this Court recommends that the Court decline to exercise supplemental jurisdiction over the claims against the UPR Defendants, and that the

UPR Defendants' Motion to Dismiss be allowed on this basis.[14]

## V. CONCLUSION

For all the reasons detailed herein, this Court recommends that the FOMB's Motion to Dismiss (Docket No. 17) be ALLOWED pursuant to Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction. In addition, this Court recommends and that the Court decline to exercise supplemental jurisdiction over the claims against the UPR Defendants, and that the UPR Defendants' Motion to Dismiss (Docket No. 18) be ALLOWED on this basis. [15]

/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[14] The UPR Defendants also contend that the claims against them in this Court are barred by the doctrine of sovereign immunity. The Plaintiffs argue that the Commonwealth has waived such immunity, and that the waiver covers the UPR Defendants. This issue does not need to be reached or resolved since the Court has no original jurisdiction of the claims against the UPR Defendants, and there is no basis for this Court to exercise supplemental jurisdiction.

[15] The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72 any party who objects to these proposed findings and recommendations must file a written objection thereto with the Clerk of this Court within 14 days after being served with this Report and Recommendation. The written objections must specifically identify the portion of the proposed findings, recommendations or report to which objection is made and the basis for such objections. The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with this Rule shall preclude further appellate review. See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 275 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604-05 (1st Cir. 1980); United States v. Vega, 678 F.2d 376, 378-79 (1st Cir. 1982); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); see also Thomas v. Arn, 474 U.S. 140, 153-54, 106 S. Ct. 466, 474, 88 L. Ed. 2d 435 (1985); accord Phinney v. Wentworth Douglas Hosp., 199 F.3d 1, 3-4 (1st Cir. 1999); Henley Drilling Co. v. McGee, 36 F.3d 143, 150-51 (1st Cir. 1994); Santiago v. Canon U.S.A., Inc., 138 F.3d 1, 4 (1st Cir. 1998).