# United States Court of Appeals
## For the First Circuit

No. 21-1690

IN RE: THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Commonwealth of Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Sales Tax Financing Corporation, a/k/a Cofina; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Employees Retirement System of the Government of the Commonwealth of Puerto Rico; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Highways and Transportation Authority; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative for the Puerto Rico Electric Power Authority (PREPA); THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO, as Representative of the Puerto Rico Public Buildings Authority,

Debtors,

ASOCIACION PUERTORRIQUENA DE PROFESORES UNIVERSITARIOS; ANGEL RODRIGUEZ-RIVERA; JAVIER CORDOVA-ITURREGUI; HERIBERTO MARIN-CENTENO; YOHANA DE-JESUS-BERRIOS; ANNABELL C. SEGARRA; NYDIA E. CHEVEREZ-RODRIGUEZ; FRANCES BOTHWELL-DEL TORO; IVETTE BONET-RIVERA; LIDA ORTA-ANES,

Plaintiffs, Appellants,

MARIA DEL MAR ROSA RODRIGUEZ,

Movant, Appellant,

v.

UNIVERSITY OF PUERTO RICO; GOVERNING BOARD OF THE UNIVERSITY OF PUERTO RICO; MAYDA VELASCO-BONILLA, in her official capacity as President of the Governing Board of the University of Puerto Rico; WALTER ALOMAR-JIMENEZ, in his personal capacity; RICARDO DALMAU-SANTANA, in his official capacity as Vice-President of

the Governing Board of the University of Puerto Rico; ZORAIDA BUXO-SANTIAGO, in her personal capacity; MANUEL GONZALEZ-DEL TORO, in his official capacity as a member of the Governing Board of the University of Puerto Rico; ERIC PEREZ-TORRES, in his personal capacity; ALEJANDRO CAMPORREALE-MUNDO, in his official capacity as a member of the Governing Board of the University of Puerto Rico and in his personal capacity; HERMAN CESTERO-AGUILAR, in his official capacity as a member of the Governing Board of the University of Puerto Rico; ANTONIO MONROIG-MALATRASSI, in his official capacity as a member of the Governing Board of the University of Puerto Rico and in his personal capacity; MARGARITA VILLAMIL-TORRES, in her official capacity as Secretary of the Governing Board of the University of Puerto Rico; NEFTALI SOTO-SANTIAGO, in his personal capacity; ELIEZER RAMOS-PARES, in his official capacity as a member of the Governing Board of the University of Puerto Rico; EMILIO COLON-BELTRAN, in his official capacity as a member of the Governing Board of the University of Puerto Rico and in his personal capacity; JORGE VALENTIN-ASENCIO, in his official capacity as a member of the Governing Board of the University of Puerto Rico; LEONARDO VALENTIN-GONZALEZ, in his official capacity as a member of the Governing Board of the University of Puerto Rico; LOURDES SOTO DE LAURIDO, in her official capacity as a member of the Governing Board of the University of Puerto Rico; ELIUD RIVAS-HERNANDEZ, in his official capacity as a member of the Governing Board of the University of Puerto Rico; MAYRA OLAVARRIA-CRUZ, in her personal capacity and in her official capacity as Interim President of the University of Puerto Rico; JORGE HADDOCK-ACEVEDO, in his personal capacity; THE FINANCIAL OVERSIGHT AND MANAGEMENT BOARD FOR PUERTO RICO; ALAN RODRIGUEZ-PEREZ, in his personal capacity; UNIVERSITY OF PUERTO RICO RETIREMENT SYSTEM; NAOMY RIVERA, in her personal capacity; JORGE RIVERA-VELAZQUEZ, in his official capacity as a member of the Governing Board of the University of Puerto Rico and in his personal capacity,

Defendants, Appellees,

MARYSEL PAGAN-SANTANA; EFRAIN RODRIGUEZ-OCASIO,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Laura Taylor Swain,[*] U.S. District Judge]

Before

Kayatta, Howard, and Thompson,
Circuit Judges.

Tanaira Padilla Rodríguez, with whom Guillermo Ramos Luiña was on brief, for appellants.
Mark D. Harris, with whom Timothy W. Mungovan, John E. Roberts, Martin J. Bienenstock, Dietrich L. Snell, Michael T. Mervis, Lucas Kowalczyk, and Proskauer Rose LLP were on brief, for appellee Financial Oversight and Management Board for Puerto Rico.
Francisco J. González-Magaz, with whom Juan M. Casellas-Rodríguez, Ocasio Law Firm, LLC, and Nolla, Palou & Casellas, LLC were on brief, for appellees Governing Board of the University of Puerto Rico and University of Puerto Rico.

February 14, 2023

---

[*] Of the Southern District of New York, sitting by designation.

**KAYATTA**, <u>Circuit Judge</u>.  The University of Puerto Rico (UPR) is a "covered territorial instrumentality" of the Commonwealth's government within the meaning of section 5 of the Puerto Rico Oversight, Management, and Economic Stability Act (PROMESA), 48 U.S.C. § 2104.[1]  As such, it is subject to the oversight of the Financial Oversight and Management Board for Puerto Rico (the "FOMB" or the "Oversight Board").  <u>See</u> 48 U.S.C. § 2121(d)(1)(A).  In exercising that oversight, the Oversight Board determined that the UPR Retirement System -- the entity that administers UPR's pension plan -- was headed towards insolvency.  The Oversight Board therefore issued fiscal plans for UPR that, among other things, identified the options that UPR had for adjusting (or not) its continuing accrual of obligations to the Retirement System.

Understandably opposed to any reduction in the Retirement System's benefit payments that would occur should UPR not increase (much less reduce) its accrual of obligations to the Retirement System, the Asociación Puertorriqueña de Profesores Universitarios (APPU) -- an association of active and retired UPR professors -- and nine of its individual members filed this

---

[1] All uses of "section" refer to PROMESA, Pub. L. No. 114-187, 130 Stat. 549 (2016), unless otherwise specified.

- 4 -

adversary proceeding in the Title III court.[2] Plaintiffs seek to block any pension changes by, among other things, enjoining the Oversight Board from having any "involvement" with the operation and benefits of the Retirement System. Named as defendants are the Oversight Board, UPR, the UPR Governing Board, and the UPR Retirement System (the latter three, together, the "UPR defendants"). For the following reasons, we affirm the judgment of the Title III court dismissing the complaint for lack of jurisdiction.

## I.

### A.

Congress enacted PROMESA in 2016 "to address Puerto Rico's 'fiscal emergency.'" Fin. Oversight & Mgmt. Bd. for P.R. v. Pierluisi (In re Fin. Oversight & Mgmt. Bd. for P.R.), 634 B.R. 187, 193 (D.P.R. 2021) (quoting 48 U.S.C. § 2194(m)). "The [Oversight] Board, established 'as an entity within the territorial government' of Puerto Rico, was empowered by PROMESA to, among other things, develop, approve, and certify Fiscal Plans and Territory Budgets [for the Commonwealth and its instrumentalities], negotiate with the Commonwealth's creditors, and, under Title III, to commence a bankruptcy-type proceeding on behalf of the Commonwealth [or its instrumentalities]." Méndez-

---

[2] "Title III court" refers to the district court overseeing the bankruptcy proceedings under Title III of PROMESA.

Núñez v. Fin. Oversight & Mgmt. Bd. for P.R. (In re Fin. Oversight & Mgmt. Bd. for P.R.), 916 F.3d 98, 104 (1st Cir. 2019) (citations omitted). "The purpose of the Oversight Board is to provide a method for [Puerto Rico] to achieve fiscal responsibility and access to the capital markets." 48 U.S.C. § 2121(a). Under section 204, the Oversight Board "may take such actions as it considers necessary to ensure that [Commonwealth laws], contract[s], rule[s], executive order[s] or regulation[s] will not adversely affect the territorial government's compliance with the Fiscal Plan, including by preventing the execution or enforcement of [such law], contract, rule, executive order or regulation." 48 U.S.C. § 2144(a)(5), (b)(5); see Pierluisi, 634 B.R. at 200-01.

**B.**

On June 5, 2019, the Oversight Board certified a fiscal plan for UPR that addressed, in relevant part, "the challenges facing the UPR Retirement System." The Oversight Board had concluded, "if UPR continues its current funding policy its pension plan will be insolvent by 2031." The 2019 plan described "[t]hree policy options . . . available to UPR": (1) "[c]ontinue UPR's current defined benefit plan and return to making the full actuarially required contribution of roughly $160 million per year"; (2) "[f]reeze UPR's current defined benefit plan and move to a defined contribution (DC) plan[,] [and] [m]ake no other changes to the pension plan (e.g., do not cut accrued benefits)";

- 6 -

and (3) "[f]reeze UPR's current defined benefit plan and move to a defined contribution (DC) plan[,] [and] [p]rogressively reduce accrued benefits."  The Oversight Board stated that it "strongly believes that Option 3 is the most responsible course of action for UPR."

On June 12, 2020, the Oversight Board certified a new fiscal plan for UPR.  The new Plan reiterated the finding that the pension plan would be insolvent by 2031, but presented only the second and third policy options from 2019 as viable paths forward, eliminating the first option of fully funding the pension plan as is.  The Oversight Board echoed its recommendation that Option 3 from the 2019 plan -- freezing the defined benefit plan, moving to a defined contribution plan, and reducing accrued benefits -- was the "most responsible" option.

On March 25, 2021, the UPR Governing Board approved a plan to close the defined benefit program to all non-vested participants and new employees after December 31, 2021.  In the 2021 fiscal plan for UPR, certified on May 27, 2021,[3] the Oversight Board acknowledged that this policy change was "a step in the right direction."  Fin. Oversight & Mgmt. Bd. for P.R., Fiscal Plan for

---

[3] Plaintiffs discuss the 2021 fiscal plan in their opening brief on appeal and in their supplemental complaint tendered in the district court, but never submitted the plan itself. We take judicial notice of the plan as filed on the Oversight Board's public website. See Gent v. CUNA Mut. Ins. Soc'y, 611 F.3d 79, 84 n.5 (1st Cir. 2010).

the University of Puerto Rico 51 (May 27, 2021), https://drive.google.com/file/d/1vFwFRjmG5rBlUt83vGYUJBF0EPH8odhD/view. However, the Oversight Board also stated that "the funding of the [pension] plan remains a risk in the long-term" and then provided the same options as presented in the 2020 fiscal plan, stating that only the option that would reduce accrued benefits (Option 3 from the 2019 plan) "meets UPR's risk objectives." Id. at 51-52.

C.

In April 2019, plaintiffs commenced this adversary proceeding in Puerto Rico's ongoing Title III case. They subsequently amended their complaint to include details from the 2019 fiscal plan. As summarized in their appellate brief, "[t]he central allegations of the Amended Complaint were that": "the FOMB lacked any authority over the Retirement System and was thus precluded from including in the [2019 fiscal plan] reforms to the Retirement System"; "UPR and its Governing Board had failed to comply with their fiduciary duties towards the Retirement System, its participants and beneficiaries"; UPR breached its fiduciary duty and violated the Contracts Clause; and "the FOMB's continuous and illegal pressure to the Governing Board to secure a reform of the Retirement System . . . constituted a tortious interference with the Governing Board's contractual obligations and fiduciary duties." Plaintiffs sought, among other things, an injunction

- 8 -

"staying any involvement of the Oversight Board with the operation and benefits of the Retirement System," an injunction "staying further compliance of the Governing Board with the instructions of the Oversight Board," and compensation for damages.

Defendants moved to dismiss under Fed. R. Civ. P. (12)(b)(1) and 12(b)(6). The magistrate judge to which the case was referred recommended dismissal of the claims against both the Oversight Board and the UPR defendants. With respect to the claims against the Oversight Board, the judge concluded that (i) plaintiffs had failed to identify an injury-in-fact necessary for Article III standing because there had "been no reduction in pension benefits, and UPR ha[d] not selected, much less implemented, any modifications to the Retirement System that reduce [benefits owed to plaintiffs]," and (ii) the district court lacked subject matter jurisdiction over the challenge pursuant to section 106(e), which provides, "[t]here shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under this chapter." 48 U.S.C. § 2126(e). The magistrate judge further recommended that, given the dismissal of the claims against the Oversight Board, the district court should decline to exercise supplemental jurisdiction over the claims against the UPR defendants, which are all matters of Puerto Rico law.

- 9 -

Following the issuance of the magistrate judge's report and recommendation, plaintiffs filed with the district court an objection to the magistrate report and moved for leave to amend their complaint to incorporate the updates in the 2020 fiscal plan. The district court adopted the magistrate's report "in its entirety" and denied plaintiffs' motion to amend as futile, concluding that the added details still failed to "establish standing, jurisdiction, or allow the Court to exercise supplemental jurisdiction."

Plaintiffs then moved for reconsideration. They also moved to file a supplemental complaint that discussed the 2021 fiscal plan and the UPR Governing Board's decision to close the defined benefit program to all non-vested participants and new employees. The district court denied both motions, finding that the additional facts would not affect the court's legal conclusions. Plaintiffs timely appealed.

## II.

Plaintiffs argue that the district court erred in granting dismissal pursuant to Rule 12(b)(1). They contend that section 106(e) does not bar their claims, and that they otherwise have Article III standing. Lastly, they contend that the district court erred in denying their motions for reconsideration and supplementation because the Oversight Board's and UPR Governing Board's 2021 actions -- as described in plaintiffs' post-judgment

- 10 -

proposed supplemental brief -- "directly affect the conclusion that plaintiffs lack constitutional standing."

### A.

We begin with the question whether section 106(e) precludes subject matter jurisdiction over plaintiffs' claims against the Oversight Board. "The issue is a critical one, for if the District Court correctly understood and applied [section 106(e)], we do not reach the question whether the minimum requirements of Art. III have been satisfied. If [plaintiffs are] correct, however, then the constitutional question is squarely presented." Gladstone Realtors v. Village of Bellwood, 441 U.S. 91, 101 (1979) (addressing statutory standing under section 812 of the Fair Housing Act of 1968); see Block v. Cmty. Nutrition Inst., 467 U.S. 340, 353 n.4 (1984) ("Since congressional preclusion of judicial review is in effect jurisdictional, we need not address the standing issues decided by the Court of Appeals in this case."). Our review is de novo. See Lyman v. Baker, 954 F.3d 351, 359 (1st Cir. 2020); Aurelius Cap. Master, Ltd. v. Puerto Rico (In re Fin. Oversight & Mgmt. Bd. for P.R.), 919 F.3d 638, 644 (1st Cir. 2019). "In so doing, we 'construe the [c]omplaint liberally and treat all well-pleaded facts as true,' with [plaintiffs] receiving 'the benefit of all reasonable inferences.'" Aurelius, 919 F.3d at 644 (alterations in original)

- 11 -

(quoting Town of Barnstable v. O'Connor, 786 F.3d 130, 138 (1st Cir. 2015)).

Section 106 addresses court actions arising from PROMESA. With a few exceptions, section 106(a) confers general jurisdiction on the District of Puerto Rico over claims brought against the Oversight Board. One of those exceptions is contained in section 106(e), which provides, "[t]here shall be no jurisdiction in any United States district court to review challenges to the Oversight Board's certification determinations under this chapter." 48 U.S.C. § 2126(e).

Plaintiffs contend that their challenge is not to the "Oversight Board's certification determinations," id., but rather to "the scope of the FOMB's authority." Because section 201(b)(1) only empowers the Oversight Board to develop and certify fiscal plans "with respect to the territorial government or covered territorial instrumentalit[ies]," 48 U.S.C. § 2141(b)(1), plaintiffs argue, "[a] Fiscal Plan not with respect to the territorial government or covered territorial instrumentality, is outside the authority of the FOMB." They assert the Retirement System is an "an independent legal trust that is not a covered territorial entity"[4] and thus cannot be "include[d] in a fiscal

---

[4] While the Oversight Board argues that the Retirement System is a covered entity, we need not resolve this issue to determine whether we have jurisdiction. For purposes of this analysis, we

- 12 -

plan."  Plaintiffs further argue that because the UPR Governing Board's role as trustee of the Retirement System is "separate from its role as governing body of" UPR, the FOMB "cannot exercise . . . power over the Governing Board as a trustee of the Retirement System" even if it "can exercise oversight power over" UPR.

We need not reach or opine on plaintiffs' premise that section 106(e) would not preclude federal court adjudication of a challenge to a fiscal plan if the plan were not authorized by PROMESA.  PROMESA clearly authorized the Oversight Board to issue a fiscal plan for any covered Commonwealth instrumentality.  See 48 U.S.C §§ 2121(d)(1)(A), (E), 2141(b)(1).  The fiscal plans at issue here, which plaintiffs make clear form the basis of their claims against the Oversight Board, are for UPR.  And plaintiffs concede that UPR is a "covered instrumentality."  Plaintiffs nevertheless complain that the plans impermissibly affect the Retirement System, and them, through pension policy changes.  But that is a complaint about the fiscal plans themselves, not a plausible contention that the plans are not authorized. A debtor's compliance with a certified plan is almost always going to affect others, most notably creditors and counterparties.  Here, for example, if UPR reduces payments to the Retirement System, or otherwise adjusts its obligations to the system, that will

---

assume the Retirement System is simply a third-party creditor of UPR, as plaintiffs describe.

undoubtedly affect the Retirement System. But that fact does not make the plan an "unauthorized" plan for the Retirement System, any more than a plan of reorganization for a debtor would be a plan of reorganization for the debtor's affected creditors or counterparties.

Nor does it add anything to plaintiffs' case to argue that UPR's Governing Board acts on some matters as a fiduciary for the Retirement System. Plaintiffs develop no argument that the fiscal plans dictate actions by the Governing Board as trustee (as opposed to, for example, actions by UPR as settlor). In any event, Commonwealth instrumentalities may well have many roles and types of obligations and duties. Nothing in PROMESA limits the scope of fiscal plans so as to exclude attention to any and all of those obligations as they bear on the entities' fiscal health.

In sum, PROMESA authorized the issuance of the fiscal plans that plaintiffs seek to challenge, so the question whether plaintiffs could challenge an unauthorized plan is irrelevant to the disposition of this appeal. And plaintiffs here "have the burden of demonstrating the existence of federal jurisdiction," Acosta-Ramirez v. Banco Popular de P.R., 712 F.3d 14, 20 (1st Cir. 2013). Because they make no other arguments for jurisdiction over their claims against the Oversight Board -- all of which, in one way or the other, rest on challenges to the Oversight Board's certifications and reasoning -- section 106(e) precludes the

district court from exercising jurisdiction over those claims. Cf. Méndez-Núñez, 916 F.3d at 112-13 ("[Section] 106(e) bars district courts from reviewing the reasons for certification determinations as much as the certification determinations themselves.").

**B.**

Plaintiffs finally argue that the district court erred in dismissing, sua sponte, the sixth, seventh, and eighth claims for relief, all of which are against only the UPR defendants. Those claims requested the court to: (6th) order UPR to pay damages for "any loss or depreciation of trust property and any profit made by trustee resulting from the breach of fiduciary duties of the Governing Board"; (7th) "remove the Governing Board as trustee of the Retirement System"; and (8th) "appoint the Retirement System Board as successor trustee of the Retirement System." But plaintiffs concede that supplemental jurisdiction is the only basis for jurisdiction over all the claims against the UPR defendants (including these claims) and make no argument that maintaining supplemental jurisdiction would be appropriate following the dismissal of the claims against the Oversight Board. See 28 U.S.C. § 1367(c)(3); Wilber v. Curtis, 872 F.3d 15, 23 (1st Cir. 2017) ("[W]e have held that, when all federal claims have been dismissed, it is an abuse of discretion for a district court to retain jurisdiction over the remaining pendent state law claims

unless doing so would serve 'the interests of fairness, judicial economy, convenience, and comity.'" (quoting Desjardins v. Willard, 777 F.3d 43, 45 (1st Cir. 2015))).

### C.

Having concluded that section 106(e) precludes review of plaintiffs' claims against the Oversight Board, and having agreed that all claims under Commonwealth law against the UPR defendants must also be dismissed under 28 U.S.C. § 1367(c)(3), we need not consider the question of constitutional standing. See Gladstone Realtors, 441 U.S. at 101; Block, 467 U.S. at 353 n.4. Because we do not address standing, we need not address whether the events of 2021, as described in plaintiffs' proposed supplemental complaint, would have any effect on the district court's constitutional analysis. Instead, since plaintiffs make no argument that supplementation would affect the section 106(e) analysis, we easily conclude that the district court properly denied plaintiffs' motion for reconsideration and supplementation.

### III.

For the foregoing reasons, the judgment of the district court is affirmed.